IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 14 CR 366 |
| BRIAN THURMAN, | ) ) ) | Judge Virginia M. Kendall |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 3, 2015, Defendant Brian Thurman was charged by superseding indictment with using and maintaining a drug-involved premises in violation of 21 U.S.C. § 856 (Count I); distributing 100 grams or more of a mixture and substance containing heroin in violation of 21 U.S.C. § 841(a)(1) (Count II); and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count III). Following a two day trial, a jury convicted Thurman of Count II and found him not guilty of Counts I and III. (Dkt. No. 112.) Thurman now moves for judgment of acquittal under Fed. R. Crim. P. 29(c), or in the alternative, requests a new trial under Fed. R. Crim. P. 33. For the reasons set forth below, Thurman's Motion [123] is denied.

## LEGAL STANDARD

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction against a defendant. *See* Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to convict him. *See United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (citing *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). Once convicted, the Court reviews the evidence presented to

1

the jury in the light most favorable to the Government and makes all reasonable inferences in the Government's favor. *See United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) (citing *United States v. Larkins*, 83 F.3d 162, 165 (7th Cir. 1996)). The Court may overturn the jury's guilty verdict "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *United States v. Stevenson*, 680 F.3d 854, 855-56 (7th Cir. 2012)). The jury must weigh the evidence and assess the witnesses' credibility, and courts do not "second-guess the jury's assessment of the evidence." *See United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008).

Alternatively, a court may vacate a judgment and grant a new trial upon the defendant's motion "if the interest of justice so requires." *See* Fed. R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). Unlike a motion for acquittal, the Court need not view the evidence in the light most favorable to the Government. *See United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). Rather, "a defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006); *see also United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12 (2005). Rule 33 motions are generally disfavored and courts should only grant them in "the most 'extreme cases.'" *See United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States V. Morales*, 902 F.2d 604, 606 (7th Cir. 1990); *see also United States v. Kamel*, 965 F.2d 484, 490 n.7 (7th Cir. 1992). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citations omitted).

**DISCUSSION**

Thurman moves for a judgment of acquittal or alternatively a new trial on six grounds: (1) the evidence presented at trial was insufficient to support a guilty verdict on Count II; (2) the jury's verdict was inconsistent; (3) the Court erred in denying Thurman's prior motion to suppress; (4) the Court erred in admitting the August 20, 2013 recording; (5) the Court improperly instructed the jury with regards to Count II; (6) the Court improperly precluded arguments about Thurman's potential punishment from going to the jury. (*See* Dkt. Nos. 123; 142).

**I.     Sufficient Evidence Exists to Support a Guilty Verdict on Count II**

Thurman asserts that he is entitled to a judgment of acquittal because the evidence presented to the jury was insufficient to sustain his conviction on Count II. He principally contends that the evidence adduced at trial was inherently unreliable because the Government's case relied "entirely on the word of a convicted felon and admitted liar," witness Courtney Williams[1]. (*See* Dkt. No. 142 at 2.) In addition, he argues that Williams's testimony was not supported by other evidence in the case and that the Court should have therefore discarded Williams's testimony.

As an initial point, the Court is obliged to "defer[] to the jury's credibility determinations" and "cannot second-guess the jury's determination of which witnesses were credible and which were not." *United States v. Graham*, 315 F.3d 777, 781 (7th Cir. 2003). Thurman's current arguments that Williams is an "admitted liar" and that his prior convictions render him a flawed witness, *see* Dkt. No. 142 at 3-4, are essentially requests to this Court to "reweigh the credibility of the witness[]." *See, e.g., Myers v. Scales*, No. IP 00-0457-C-T/K,

---

[1] Williams was the Government's cooperating individual in the case. For ease of reference, the Court refers to him as Williams or "CI" throughout this Order.

2002 WL 31242735, at *2 (S.D. Ind. Aug. 30, 2002). "However, it is within the exclusive province of the jury to judge the facts and the credibility of the witnesses." *See, e.g., id*. at *2; *see also Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) ("Rather, credibility questions are within the province of the trier of fact, in this case a jury."); *Hasham v. Ca. State Bd. of Equalization*, 200 F.3d 1035, 1047 (7th Cir. 2000) (same). Given that the Court may not overtake the jury's role and reassess witness credibility, Thurman's assertions that the Court should overturn the jury's verdict because Williams is a "known liar" are insufficient to meet the nearly insurmountable hurdle before him.

Moreover, Thurman's position that Williams's testimony was wholly uncorroborated is inaccurate. Williams's testimony was corroborated by phone calls, text messages, tape recordings, other witness testimony, tangible evidence, and of course, his own admissions. First, contrary to Thurman's argument that there was no support for Williams's testimony that he obtained heroin from Thurman on September 23, 2013, the jury heard from other witnesses that substantiated Williams's claims that he bought heroin from Thurman. For example, Officer Jason Eikam testified in detail regarding how Williams agreed to cooperate against his heroin source, who he identified as Thurman, on August 6, 2013, returned to Thurman's residence to pay off part of the debt that he owed to Thurman in a controlled transaction on August 20, 2013, and ultimately purchased 150 grams of heroin from Thurman on September 23, 2013. (*See, e.g.,* Dkt. No. 137 at 135 ("Q. So that day, August 20th, what was your plan for the investigation? A. Courtney Williams was going to go to his source of heroin's residence and pay off part of the debt that was still owed on the heroin that was seized in Deluth."); *id*. at 191 (testimony regarding heroin that Thurman sold to Williams during the controlled purchase on September 23).) In addition to providing background on the purpose of each interaction between Williams

4

and Thurman, Eikam also testified about the steps the authorities took to control the interactions, including photographing or recording the money that Williams gave to Thurman to pay off his debt or purchase the heroin, searching Williams's vehicle for contraband, cash, and other controlled substances both before and after his meetings with Thurman, and equipping Williams with an audio-transmitting and audio-video recording devices.

Second, the Government presented numerous exhibits to the jury at trial that supported Williams's testimony that Thurman sold him heroin on September 23, 2013. Without reviewing each piece of evidence, the Government presented to the jury:(1) the 150 grams of heroin that it recovered from Thurman's home on September 23, 2013, Govt. Exs. 2A-B; (2) text messages between Williams and Thurman that, based on Williams's testimony, included a discussion of how much heroin Williams requested (150 grams), when the heroin was ready for pickup, and when the drug distribution would occur, Govt. Exs. 102 A-M; (3) recorded phone calls between Williams and Thurman in which Thurman indicated that he needed to pick up heroin[2] and make other arrangements for the drug deal, Govt. Ex. 104; (4) the plastic baggies recovered from Thurman's home that matched the kinds of baggies containing heroin that Thurman sold to Williams, Govt. Ex. 4; and (5) phone records showing that Thurman contacted his drug supplier, Meko, on September 23 in advance of the distribution. (Govt. Ex. 302C (summary of phone calls between Thurman and Meko).) All of these pieces of evidence were further corroborated by the testimony of other witnesses. For example, Nicholas Brown, an investigative analyst with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), testified in detail regarding Thurman's phone records and in particular his numerous phone calls to Meko. (Dkt. No. 137 at 519:24-520:19 (Brown reviewing the phone records, including time and duration of phone calls

---

[2] On the recorded phone calls, Thurman stated that he needed to pick up "dog food." Both Williams and Special Agent Karceski, the Government's expert witness, testified that the term "dog food" is a coded term for heroin. (*See* Dkt. No. 137 at 335:13-22; *id.* at 104:15-20 (Karceski's testimony).)

5

between Meko and Thurman); *id*. at 521:11-19 ("Q. Sir, could you please tell the jury what's reflected – what information is reflected in this chart? A. There are six calls made between Meko and Thurman…Q. This is all on September 23, 2013? A. Yes.").)

Third, the jury heard testimony from both ATF Special Agent Christopher Labno and Officer Eikam regarding Thurman's own admission statements following his arrest on September 23, 2013. Specifically, after receiving Thurman's verbal affirmation that he understood his rights, Labno and Eikam asked Thurman if he had sold heroin that night, who he had sold it to, and who his supplier was. Thurman responded to all three questions. First, Thurman admitted that he sold 150 grams of heroin to an individual named "Skinny" that night. (*See* Dkt. No. 137 at 408:10-12 (Labno testifying that Thurman "said that a friend of his named Simeon introduced him to someone he knew as Skinny, and that he was selling that individual heroin."); *id*. at 484:13-24 (Eikam's direct examination: "Q. Now, sir, did the defendant also talk about what had happened earlier that night on September 23rd, 2013? A. Yes. Q. Explain for members of the jury what the defendant said during that part of the conversation. A. He said he sold approximately 150 grams to the male he knew as Skinny.").) Thurman went on to describe Skinny as a skinny black male with braids and a goatee; a description matching Williams's physical appearance at the time.[3] (*Id*. at 408:19-23 ("Q. Now, when you heard that description of Skinny, did it sound familiar of anyone to you? A. Yes. Q. Who? A. Courtney Williams.").) Both officers also testified that Thurman identified Meko as his drug supplier. (*Id*. at 412:7-22 (during Labno's direct examination: "Q. Did the defendant give you a name…for the drug

---

[3] Thurman's statements identifying Williams as his customer were further supported by Michael Theis, a forensic examiner with the Regional Computer Forensics Laboratory, who testified that an examination of Thurman's iPhone revealed deleted text messages that matched messages that Williams sent to Thurman's phone at law enforcement's direction. (*See, e.g.,* Dkt. No. 137 at 510:10-17 (Theis testifying that his analysis of the phone revealed numerous messages, including one from Williams to Thurman on September 3, 2013, stating "This is Skinny this the new line.").)

supplier? A. Yes. Q. What did he say? A. He said that his heroin supplier was a gentleman named Meko and that -- Q. M-E-K-O? A. M-E-K-O."); *id.* at 484:20-24 (Eikam's direct examination: "Q. Did he say who had provided that heroin? A. Yes. Q. Who? A. He said that -- he said that Meko supplied him with the heroin.").)

Fourth, and despite Thurman's contention to the contrary, Agent Karceski's expert testimony further supported the jury's verdict. Karceski testified regarding a number of issues based on his 25 years of experience in investigating drug crimes, including (but not limited to) what products drug dealers kept in their homes (such as caffeine, sugar, lactose, etc.), what an approximate street value of heroin was in September of 2013, and that drug dealers often maintained secret compartments for their stash. Thurman now argues, without any citation to authority supporting his position, that because he did act consistently with some of those generalizations, the jury's verdict must be overturned. However, Thurman's argument is entirely illogical. Indeed, the jury could have consistently found, as it did, that Thurman distributed drugs on September 23rd even if he did not act like the other drug dealers that Karceski had investigated over his long career. Moreover, much of Karceski's testimony was consistent with Thurman's actions in this case. For example, Thurman argues that Williams's testimony that he paid $37,000 for 500 grams of heroin was undermined by Karceski's testimony that a price for a kilogram of heroin ranged from between $50,000 to $70,000. (Dkt. No. 142 at 9.) However, Karceski went on to testify that the price could increase depending on the quantity purchased and specifically that the price would increase if a smaller amount was purchased:

    Q:    Now what are some of the factors that can affect the price of heroin?
    A:    Like I said, quantity, the relationship with the organization that you are involved in.
    Q:    Does the price -- is that all dependent upon the quantity of the drug that's being sold?
    A:    It's a big factor of it.

> Q: Why is that?
> A: It's kind of getting a quantity discount. If -- if I go to Walgreens and buy a pack of toilet paper, it's going to cost me a lot more for those four rolls than if I go to Costco and buy the 36 [pack]. When you break it down per roll, it's going to be a lot cheaper to get it in larger quantities.

(Dkt. No. 137 at 103:11-23.) As such, the fact that Williams paid slightly more for a half-kilogram than one would directly extrapolate from Karceski's estimate for the price of a kilogram is not inconsistent with the latter's testimony.

Given that this evidence is a only a summary of the substantial amount of evidence that the Government placed before the jury, and taking all reasonable inferences in favor of the Government, it was reasonable that the jury found Williams's testimony regarding Thurman's culpability both reliable and persuasive. Moreover, based on the plethora of evidence, Thurman has failed to show that the "record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *Jones*, 713 F.3d at 340.

## II. Jury's Verdict was Consistent

Thurman next asserts, in a single paragraph without any meaningful analysis, that he is entitled to relief because the jury found Thurman guilty of distributing more than 100 grams of heroin in Count II but did not find him guilty of Counts I and III. Thurman argues that because "[a]ll three counts shared the common element of distributing a controlled substance," the jury's verdict is inconsistent. (Dkt. No. 123 at 2.)

This argument is rejected for a number of reasons. First, Thurman's failure to develop his contention – he does not cite any case law and does not flesh out his position in any depth – results in waiver. *See United States v. Hassebrock,* 663 F.3d 906, 914 (7th Cir. 2011) (finding the argument was "decidedly underdeveloped and therefore waived"); *United States v. Foster,* 652 F.3d 776, 793 (7th Cir. 2011) ("As we have said numerous times, undeveloped arguments

are deemed waived [.]") (internal quotation marks and citation omitted). Second, even if this Court were to reach the merits of the argument, "it is well established that '[i]nconsistent verdicts in a criminal case are not a basis for reversal of a conviction or the granting of a new trial.'" *United States v. Evans*, 486 F.3d 315, 322 (7th Cir. 2007) (quoting *United States v. Reyes*, 270 F.3d 1158, 1168 (7th Cir. 2001) (collecting authority).) Third, and in any event, the verdict is not actually inconsistent. Each of the charged counts includes different elements of proof. For example, the jury's guilty verdict on Count II, that Thurman distributed more than 100 grams of cocaine, is consistent with its not guilty verdict in Count III because the jury could have determined that the Government did not prove that Thurman used his property in furtherance of the distribution and that he did not possess a gun in furtherance of the drug distribution while still finding that Thurman did indeed distribute heroin.

### III. Court Did Not Err in Denying Thurman's Motion to Suppress

Third, Thurman contends that he should be afforded a new trial because the Court erred by denying his motions to suppress evidence obtained from a search of his phone and statements that he made to law enforcement at the time of his arrest. (*See* Dkt. No. 123 at 4.) An accused has the right to remain silent and the right to consult with an attorney during questioning. *See United States v. Littledale*, 652 F.3d 698, 701 (7th Cir. 2011). The Government must "establish [by a preponderance of the evidence] that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights when making the statement.'" *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler,* 441 U.S. 369, 373 (1979)). Waiver of those rights can be implied or explicit. *Id*. at 383-385. In terms of the cell phone, while officers must generally secure a warrant before conducting a search of a cell phone incident to a lawful arrest, *see Riley v. California*, 134 S. Ct. 2473, 2485 (2014), that requirement does not apply "where the

9

defendant consents voluntarily to the search." *United States v. Johnson*, 495 F.3d 536, 541 (7th Cir. 2007).

Thurman argues that the agents violated his constitutional rights by searching his phone and questioning him despite his refusal "to waive his rights to silence and to counsel." (*Id*.) Whether a defendant voluntarily waives his rights and agrees to speak to officers while in custody is a fact intensive inquiry and as such, the Court ordered a hearing. The Court addressed these exact concerns in depth in its prior Order denying the motions to suppress. After holding an evidentiary hearing on April 27, 2015, during which five officers testified and Thurman did not, the Court denied the motions after finding that the officers' uncontested testimony was credible. (*See* Dkt. No. 73 at 11 ("On the facts before the Court, there is no credible argument that Thurman's conduct was not a waiver of his *Miranda* rights and his motion to suppress statements made in the face of that waiver is denied."); *id*. at 13-14 ("In light of the facts now before it, this Court finds that Thurman voluntarily consented to search of his cell phone and his motion to suppress the results of that search is denied.").) Thurman's current contention, that the jury's not guilty verdicts as to Counts I and III undermine the Court's determinations, is both underdeveloped (Thurman does not explain *how* those verdicts contravene the Court's determination) and contrary to the record of the suppression hearing. Without revisiting the evidence presented at the evidentiary hearing in depth, all five of the officers testified that Thurman stated that he was interested in cooperating, verbally agreed to speak with the officers, verbally permitted the officers to search his phone, and waived his rights to counsel. (*See* Dkt. No. 73 at 1-7.) Even more, both of the defense witnesses testified that Thurman was interested in cooperating and expressed concerns about his family, effectively agreeing with the prosecution's witnesses.

Thurman fails to present any meaningful argument; therefore, there is no reason to revisit the ruling on the motion to suppress. *See, e.g., United States v. Mojica*, No. 12 CR 755-5, 2016 WL 3268991, at *3 (N.D. Ill. June 15, 2016) ("The Court presided over the hearing, listened to the testimony, and viewed the demeanor of the witnesses, and found Agent Martinez to be a credible witness while Sonia Mojica was not. The Court finds no basis on which to revisit its ruling on the motion to suppress.").

## IV. The August 20, 2013 Recording was Properly Admitted

Thurman also argues that the Court erred by admitting an audio/visual recording from an August 20, 2013 meeting between him and Williams during which Williams conducted a controlled payment for $10,000 owed to Thurman for a prior heroin debt. Thurman did not object to the admission of the recordings at trial.[4] (*See* Dkt. No. 137 at 149:7-10 ("[Prosecutor]: Your Honor, at this time the government offers Exhibits 101A through 101D into evidence. The Court: Okay. Do you have an objection? [Defense Attorney]: To the recordings, no; to the transcripts, yes.").) Thurman now contends that the tape was inadmissible hearsay and "could not have been admitted solely for context to explain Mr. Thurman's statements, because the recording showed that Mr. Thurman primarily agreed with or responded monosyllabically to monologues of the informant." (Dkt. No. 123 at 5.)

As the Court held during the parties' final pretrial conference, the August 20 recordings are not inadmissible hearsay. As an initial point, the statements were admitted as context for the

---

[4] Defense counsel perfunctorily objected to the admissibility of the recordings during the parties' voir dire. (*See* Dkt. No. 107 ("The Government's motion to admit evidence of an in-person meeting between defendant and the CI in another narcotics transaction on August 20, 2013 is granted. The Government originally moved to admit this evidence as related or in the alternative as 404(b) evidence. The Government subsequently superseded the Indictment in this case alleging the conduct that was the basis for the motion. The Court provided Defense Counsel an opportunity to file any objection to the evidence if she believed that it still constituted 404(b) evidence on or before 7/8/16. Defense counsel did not file such an objection. Although counsel perfunctorily objected to the admissibility in open court on 7/11/16, she did so without any factual or legal basis. The evidence is admitted as factually integral to the illegal conduct that the Government must prove.").)

defendants' own admissions contained in the recordings, and therefore were not to be considered for the truth of the matter asserted, falling outside of the hearsay rule. (*See* Dkt. No. 146 at 12.) Indeed, Thurman seemed to concede this point prior to trial, when his attorney only objected on prejudice grounds. (Dkt. No. 137 at 16:16-22 ("The Court: And I asked for any objection to [the motion *in limine* regarding the August 20th recording] to be filed and I didn't get one, so I assume that you recognize with the superseding indictment that it now becomes relevant? Ms. Gambino: Yes, your Honor. I still maintain my argument that its prejudicial value outweighs its probative, but I understand.").) In addition, and as Thurman admits in his motion, the basis for admitting the recordings was that they were direct evidence for Count I of the superseding indictment that charged defendant with knowingly using and maintaining a residence for distributing heroin. (*Id.*) The Court raised this very issue with the parties during the pretrial conference at which time defense counsel acknowledged that the recording was no longer hearsay pursuant to Federal Rule of Evidence 404(b) and the Government's *Santiago* proffer. Thurman's assertion that the not guilty verdict for Count I highlights the Court's alleged error in admitting the recordings is both illogical and unsupported. Thurman again fails to cite to any authority supporting his position that the jury's factual determination on an issue in any way alters a legal conclusion regarding the admissibility of evidence underlying that issue. Such a perfunctory argument is waived. *See Hassebrock,* 663 F.3d at 914; *Foster,* 652 F.3d at 793.

## V. The Court Properly Instructed the Jury

Thurman argues that the Court incorrectly instructed the jury (1) to not consider potential penalties for Thurman if it found him guilty and (2) that the Government need only prove that the distribution involved some measureable quantity of controlled substance and not the specific amount of the controlled substance. (*See* Dkt. No. 123 at 6-8.)

### A. Potential Penalties

Thurman first argues that the Court erred by precluding him from arguing about the potential penalties that he faced to the jury. Specifically, Thurman argues that the jury "is entitled to know that it is being asked [to] set sentencing parameters in addition to making an innocence or guilt finding" based on *United States v. Booker*, 543 U.S. 220, 232 (2005). (Dkt. No. 142 at 13.) Yet, that is not the proposition that *Booker* supports; instead, *Booker* held that the Sentencing Guidelines were advisory, rather than mandatory, "as the remedy for the Sixth Amendment problems with mandatory sentencing rules that require judicial fact-finding." *United States v. Hurlburt*, 835 F.3d 715, 727 (7th Cir. 2016). The Court's order here, on the other hand, is consistent with the Seventh Circuit's repeated and recent affirmations of the principle that juries are not to consider the consequences of their verdicts. *See United States v. Diekhoff*, 535 F.3d 611, 621 (7th Cir. 2008) (quoting *Shannon v. United States*, 512 U.S. 573, 579 (1994)).

*United States v. Garrett*, decided nearly a decade after *Booker*, proves instructive. 757 F.3d 560 (7th Cir. 2014). There, the defendant argued that the Court's jury instruction that the jury should not consider the punishment for the drug crime was misleading "because the jury was, in fact, being asked to determine drug quantities, and its determinations could trigger a mandatory minimum punishment." *Id*. at 751. The Seventh Circuit affirmed the district court's decision, holding that the court's instruction aligned "with the principle that determining the appropriate sentence upon conviction is fully within the province of the judge, not the jury, a principle supported by our case law." *Id*. (further stating "[i]ndeed, [t]he jury's finding of facts and application of those facts to the law just do not require it to ponder what the ultimate sentence will be." (citations and internal quotations omitted)). The facts in that case mirror those

here. The Court, prior to the jury sitting on the first day of trial, rejected this exact same argument holding that Thurman's position "has not been established yet in this circuit as law" and that the Court would "not permit any discussion about any penalty that the defendant might receive because it's based on a factual finding by the jury and it will remain up to me to make the ultimate decision…as to where he should be sentenced." (Dkt. No. 137 at 17-18.) As such, because the Court's instruction – "In deciding your verdict, you should not consider the possible punishment for the defendant who is on trial. If you decide that the government has proved the defendant guilty beyond a reasonable doubt, then it will be my job to decide on the appropriate punishment." – is an accurate statement of the law, Thurman's contention is rejected.

### B. Specific Amount of the Controlled Substance

Finally, Thurman asserts that the Court erred by giving the jury the following instruction: "The government is not required to prove that the defendant's distribution of a controlled substance involved the specific quantity of controlled substances alleged in Count Two. However, the government must prove that the distribution involved some measurable quantity of a controlled substance." (*See* Dkt. No. 142 at 10-12.) Citing to *Booker* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Thurman argues that the jury instruction incorrectly states that the jury need not make a finding of a specific quantity of the controlled substance. However, Thurman misconstrues the case law. The Seventh Circuit has time and again clarified that, even in light of *Apprendi*, "[d]rug quantity is not an element of a § 841 drug offense." *United States v. Smith*, 308 F.3d 726, 740 (7th Cir. 2002); *United States v. Macedo*, 406 F.3d 778, 787 (7th Cir. 2005) ("[W]e explicitly held that, even in light of *Apprendi,* drug quantity is not an element of the offense and need not be proven to sustain a guilty verdict under § 841(a)(1)."). Moreover, the Court's inclusion of the special verdict form requiring the jury to find (as it did) that

Thurman distributed more than 100 grams of heroin is sufficient "under *Apprendi* because the elements necessary to trigger the statutory maximum penalty are found beyond a reasonable doubt." *Macedo*, 406 F.3d at 787.

As such, Thurman's contention is denied.[5]

### CONCLUSION

For the reasons stated herein, Thurman's Motion for Judgement of Acquittal or in the Alternative a Motion for New Trial [123] is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 2/15/2017

---

[5] Thurman also asserts, without citation to supporting authority, that the Court erred by instructing the jury that Thurman did not need to know that the substance was heroin. (*See* Dkt. No. 123 at 8; Dkt. No. 142 at 11-12.) While the Court need not address such an undeveloped argument because it is waived, *see Foster,* 652 F.3d at 793, Thurman's argument is also incorrect. *See United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) ("In reading § 841, it is clear that drug type and quantity are not elements of the offense.").